**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES, et al., Defendants.**

No. 86 C 295.

United States District Court, N.D. Illinois, E.D.

April 22, 1987.

Sherry R. Faulkner, E.E.O.C., Chicago, Ill., for plaintiff.

Mark T. Dunn, Dunn, Goebel, Ulbrich, Morel & Hundman, Bloomington, Ill., Charles R. McKirdy, Pope, Ballard, Shepard & Fowle, Ltd., Kenneth R. Dolin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Plaintiff Equal Employment Opportunity Commission brings this action against defendants Board of Governors of State Colleges and Universities (the "Board"), and University Professionals of Illinois (the "Union"), under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (the "ADEA"). The action seeks to enjoin defendants from discriminating against those employees and members of the defendants who have filed charges or complaints under the ADEA. The Board has moved to dismiss the action under Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Because the court finds that plaintiff has stated a claim upon which relief can be granted, the motion is denied for the reasons set forth below.

## Factual Background

The Board (an agency of the State of Illinois) and the Union have entered into a collective bargaining agreement (the "CBA") which contains a provision that allows the Board to terminate an employee's grievance brought under the CBA once that employee files a charge of discrimination with the EEOC which "seeks a resolution of the matter" that is the subject of the grievance. Article 17.2 of the CBA provides:

> If prior to filing a grievance hereunder, or while a grievance proceeding is in progress, an employee seeks resolution of the matter in any other forum, whether administrative or judicial, the Board or any university shall have no obligation to entertain or proceed further with the matter pursuant to this grievance procedure.

On April 9, 1984, Raymond Lewis filed a grievance with the Union on account of the decision of the Northeastern Illinois University President not to recommend Lewis to the Board for tenure. The grievance charged that the Board failed to adhere to the University's procedure for granting tenure. On May 14, 1985, Lewis filed a charge of age discrimination with the EEOC. In contrast to the grievance, this charge alleged that Lewis had been denied tenure on account of his age. Besides this difference between the legal theories of these two claims, there may be other differences between the two claim procedures, such as methods of proof and possibilities for relief, but no record has yet been developed on these points.

After the Board became aware of Lewis' ADEA charge with the EEOC, it invoked Article 17.2 and terminated Lewis' grievance, reasoning that both claims arose out of the same "matter." This termination meant that Lewis was no longer entitled to arbitration of his tenure procedure dispute as prescribed in the CBA. Consequently, the EEOC then brought this action charging that at least since January 1, 1979, the Board has engaged in unlawful and discriminatory employment practices in violation of Section 4(d) of the ADEA, 29 U.S.C.

§ 623(d). Specifically, the EEOC charged the Board with discriminating against employees who have filed charges or complaints under the ADEA by terminating their grievances brought under the CBA. The EEOC has also alleged that the effect of this practice has been to deprive employees of a term or condition of employment, thus deterring them from exercising their rights under the ADEA.

## Legal Discussion

This case presents a conflict between several important and well established principles of law. The court notes them all at the outset. First is the doctrine, derived from contract law, that a party is not required to submit any dispute to arbitration that it has not agreed to submit; or, to put the principle in terms that better apply to this case, a party is not required to submit to arbitration those disputes it agreed it would not have to so submit. This principle has received Supreme Court sanction ever since the 1960 Supreme Court decisions known as the Steelworkers Trilogy. The Supreme Court has reiterated these principles as recently as its last term. In *AT & T Technologies, Inc. v. Communication Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) the Court stated:

> The principles necessary to decide this case are not new. They were set out by this Court over 25 years ago in a series of cases known as the Steelworkers Trilogy....
>
> The first principle gleaned from the Trilogy is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any matter which he has not agreed to so submit." *Warrior & Gulf*, supra [363 U.S. 564] at 582 [80 S.Ct. 1347, 1353, 4 L.Ed.2d 1424 (1960)].... This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration. (citations omitted).

■ Counterpoised against this doctrine are several other familiar precepts of federal law. First, section 4(d) of the ADEA,

29 U.S.C. § 623(d), provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has made a charge ... under this chapter." Furthermore, an "employer and the union cannot agree to terms in a labor contract which violate" federal laws. *U.S.E.E.O.C. v. County of Calumet*, 686 F.2d 1249, 1255 (7th Cir.1982). "The terms of any collective bargaining agreement must comply with federal laws that prohibit discrimination on grounds of race, color, religion, sex or national origin; that protect veterans; that regulate certain industries; and that preserve our competitive economy." *UMWA Health and Retirement Fund v. Robinson*, 455 U.S. 562, 575, 102 S.Ct. 1226, 1234, 71 L.Ed.2d 419 (1982) (citations omitted). As a result of this limitation on the permissible terms of a collective bargaining agreement, it is now settled that a union, as a party to such an agreement, may not prospectively waive the rights of the employees under such statutes as Title VII, see *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), or under the ADEA, see *County of Calumet*, 686 F.2d at 1256 ("the decision in *Alexander* extends to the ADEA").

Finally, in the Seventh Circuit, in order to prove a prima facie case of discrimination under § 4(d) of the ADEA, a plaintiff need only establish that "(1) there was statutorily protected activity by the employee; (2) adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse employment action." *Jennings v. Tinley Park Community*, 796 F.2d 962, 966-67 (7th Cir.1986); *Klein v. Trustees of Indiana University*, 766 F.2d 275, 280 (7th Cir.1985).

The EEOC argues that the conduct alleged in this case violates § 4(d) because Lewis participated in protected activity (filing an ADEA charge), adverse employment action followed (his grievance was terminated), and the adverse action was the direct consequence of the filing of his ADEA claim (i.e., Article 17.2). Furthermore, although the Union and the Board agreed that the Board would not have to submit a case to arbitration when the same "matter" was to be heard before another forum, that agreement is invalid, the EEOC urges, because it amounts to waiver of the individual employee's ADEA right to be free from retaliation for exercising ADEA rights, and such waivers are invalid.

The Board contends that its right not to submit a dispute to arbitration when it has not previously agreed to do so (such as those matters covered by Article 17.2) is fundamental. Second, the agreement embodied in Article 17.2 is valid because it does not constitute a waiver by any union member of any ADEA rights. Finally, the termination agreement served the salutory purpose of avoiding the waste of duplicative proceedings on the same "matter."

Initially, the court evaluates the Board's first contention that its right to be free from submitting to arbitration those matters it has not agreed to submit is essentially inviolate. The court does not write on a clean slate on this issue. As the Steelworkers Trilogy holds, arbitration rights are a matter of contract. Thus, the Board's "right" to be free from submitting those matters to arbitration which it has not agreed to so submit is a right based on fundamental principles of contract law: When an employer has not agreed to arbitrate a dispute, contract law provides that the employer may not be forced to arbitrate. But the employee, of course, also has the right to be free from unlawful discrimination. This case thus presents a conflict between an employer's contractual freedoms and an individual employee's right to be free from unlawful discrimination. In a related context, the Seventh Circuit has held that when there is a conflict between an individual employee's rights under the ADEA and a union's collective bargaining rights, the individual rights must be deemed "superior." *County of Calumet*, 686 F.2d at 1256. See also *Alexander*, 415 U.S. at 51–52, 94 S.Ct. at 1021. Despite the adverse effect on a union of placing certain individual rights above the interests of the collective union majority, "the principle of majority rule,

however central to the national labor relations policy, is on occasion subordinate to the rights of the individual employee. This is true of age discrimination in the workplace...." *County of Calumet*, 686 F.2d at 1256.

■ Of course, this case does not present a conflict between the rights of the individual and the rights of the collective union. It is potentially a conflict between the rights of the individual and the rights of the employer—specifically, the employer's contractual right not to have to submit to arbitration those issues it did not agree to so submit. Nevertheless, the individual rights of the employee to be free from discrimination, acknowledged in *Alexander* and *County of Calumet* to be superior to the union's rights, are also superior to the contractual rights of the employer. This is because both of those cases also deemed the contractual rights of the employer to be subordinate to the employee's federal employment rights. For example, in *Alexander* the employer was seeking to hold the employee to the terms of the collective bargaining agreement which purportedly disabled the employee from filing a Title VII action after the employee had previously submitted his claim to "final" arbitration pursuant to the agreement. In rejecting the employer's contention that the union's prospective waiver of the employee's Title VII rights in the collective bargaining agreement was valid, the Court was essentially deciding that an individual's Title VII rights were superior to an employer's right to rely on and enforce the terms of its collective bargaining agreements. See also *County of Calumet*, 686 F.2d at 1255–57. The words of the Supreme Court in *Alexander* make this result clear:

> Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver.

415 U.S. at 51–52, 94 S.Ct. at 1021.

■ Thus, the teaching of *Alexander* and *County of Calumet* is that the union's right to bargain collectively and effectively, *and* the employer's contractual right to rely on the terms of its collective bargaining agreement, are subservient to an employee's employment discrimination rights under Title VII and the ADEA. The implication for this case, therefore, is that an employer's important contractual right to be free from arbitrating those matters it agreed it would not have to arbitrate (such as those in Article 17.2) is also subservient to an employee's rights under Title VII and the ADEA. The priority of the individual employment rights over the employer's contractual rights is of such importance that the individual retains those rights even if the employer has obtained a waiver of those rights in the collective bargaining agreement. Thus, the pertinent question in this case is whether the grievance termination provision of Article 17.2 constitutes a waiver of any rights of the employees secured by the ADEA. If it does, then the waiver is invalid because: (1) a union cannot prospectively waive a member's individual ADEA rights, and (2) an employer's contractual right to rely on the terms of a collective bargaining agreement is subservient to the employee's non-prospectively-waivable ADEA rights. If Article 17.2 does not constitute a waiver of any ADEA rights, then it may be legally enforceable.

The Board vigorously argues that Article 17.2 does not amount to a waiver of any ADEA rights. For example, the Board correctly points out that nothing anywhere in the CBA states that employees have waived their rights to bring ADEA lawsuits. Thus, in one respect this case is factually dissimilar from *Alexander*. In that case, the employees had agreed in the collective bargaining agreement not to bring Title VII actions once they had submitted employment disputes to "final" arbitration. The Board contends that since the employees here did *not* agree to restrict their right to bring ADEA actions, but only

agreed to the termination of a contractually-provided grievance procedure, there has been no waiver of statutory ADEA rights.

■ This argument is wrong. There has indeed been a waiver of ADEA rights. The collective bargaining agreement states that the Board may terminate the grievance of an employee because he brings an ADEA action. This means that the Union has agreed that the Board may "discriminate" against an employee who enforces his ADEA rights. It is undisputed that § 4(d) of the ADEA prohibits an employer from engaging in discrimination against a person who brings an ADEA action. It is also clear that *Robinson* teaches that an employee may not validly agree, through a collective bargaining agreement, that his employer may discriminate against him on grounds forbidden by federal law. See *Robinson*, 455 U.S. at 575, 102 S.Ct. at 1234 (collecting cases); see also *County of Calumet*, 686 F.2d at 1249. However, Article 17.2 is just this sort of agreement. It permits the employer to discriminate against employees who bring ADEA actions. Article 17.2 is thus a waiver of the employee's right to be free from retaliatory discrimination, a right guaranteed by federal law. The waiver is therefore invalid.

■ The Board resists this conclusion by arguing that Article 17.2 should be considered valid because it prevents the unnecessary duplication of decisional resources. The court is sympathetic to the Board's desire to prevent the unnecessary duplication of scarce resources. This argument, however, does not mean the EEOC has not established a prima facie case. To establish a prima facie case for retaliation under Seventh Circuit law, the EEOC need only allege, as it has, that an employee filed an ADEA action, that adverse employment consequences followed, and that there was a causal link (Article 17.2) between the invocation of ADEA rights and the adverse reaction. The Board's contention that the adverse employment consequences (here, the terminated grievance procedure) were motivated by a desire to conserve resources rather than by a desire to retaliate against those who filed ADEA actions, appears to be an affirmative defense. Whether this affirmative justification is legally and factually sufficient to serve as a "legitimate, nondiscriminatory reason" for the Board's actions is a question the court need not reach on a motion to dismiss. There has been no record developed at this point showing that in fact failure to terminate a grievance would create a duplication of efforts. Indeed, there appears to be a significant dispute on this point. For example, the EEOC has suggested that Mr. Lewis' grievance claim and his ADEA action are not parallel. The grievance was a claim that the Board failed to adhere to the University's procedure for granting tenure. The ADEA claim, of course, is a claim of age discrimination. Moreover, there may be other differences in the two proceedings such as burdens of proof and possibilities for relief, that make the Board's protests of duplication less persuasive.

Not only is the factual sufficiency of the duplication justification in dispute, but its legal sufficiency is also in doubt. First, this type of justification does not actually rebut the EEOC's claim that the Board has discriminated against those employees who exercise their EEOC rights. Rather, it is an assertion that this sort of non-malicious discrimination ought to be acceptable. It is unclear whether § 4(d) regards this sort of discrimination as acceptable, even if it saves the employer and the union scarce resources. Presumably, the legislative judgment behind § 4(d) is that any discrimination against an employee who exercises his ADEA rights may so deter the exercise of those important rights that it is worth prohibiting that sort of discrimination. *Cf. Pettway v. American Cast Iron Pipe Company*, 411 F.2d 998 (5th Cir.1969) (describing purpose behind retaliation provision of Title VII). Second, the Supreme Court in *Alexander* seemed to expressly contemplate that duplication of decisional efforts would be an acceptable consequence of its holding in that case. The Court observed that "legislative enactments in this area [of civil rights] have long evinced a general intent to accord parallel or overlapping remedies against discrimination." *Alexander*, 415 U.S. at

47, 94 S.Ct. at 1019. This led the Court to conclude:

> We think, therefore, that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collecive-bargaining agreement and his cause of action under Title VII.

*Id.* at 59–60, 94 S.Ct. at 1025. Thus, this court has its doubts as to whether the Board's desire to avoid duplicative efforts, even if factually supportable, is a valid justification for treating employees differently simply on account of their decision to exercise their employment discrimination rights.

Finally, the Board brings to the court's attention one case which, the Board maintains, demonstrates that clauses like Article 17.2 do not violate federal law. *Board of Higher Education v. Professional Staff Congress/CUNY*, 80 Misc.2d 297, 362 N.Y. S.2d 985 (N.Y.Sup.Ct.1975), appears to be the only reported case which squarely addresses the issue in this case. There, the New York Supreme Court held that a collective bargaining agreement provision which terminated an employee's grievance when the employee filed an employment discrimination action in court was enforceable and valid. The New York court reasoned that the agreement fully protected all of the employees' statutory rights, and that was all that *Alexander* required. The agreement did waive an employee's right to arbitrate, but this was considered a right related to collective activity, and not an individual right to which an employee was statutorily entitled. Therefore, the court concluded, the right could be waived.

This court cannot accept the reasoning of *CUNY*. It is true that in general the right to arbitrate is a right that is acquired by, and therefore is related to, collective activity. But the right to be free from discrimination based on one's exercise of federal civil rights is itself an individual right guaranteed by federal statute. Therefore, a term of a collective bargaining agreement which forfeits an employee's right to arbitration just because he has brought a federal discrimination suit is itself a violation of federal law. Thus, contrary to the reasoning of *CUNY*, the CBA does *not* protect all of the employees' statutory rights. Rather, it contains an agreement permitting the employer to discriminate against an employee on the basis of an employee's exercise of his federal rights. Since an employee may not, through collective bargaining, validly agree to a violation of his federal rights, including his right not to be retaliated against, Article 17.2 as described in the complaint may be considered invalid.

Furthermore, the remarks of the Seventh Circuit, which of course carry much greater weight here than the New York Supreme Court, confirm this court's analysis. *Mozee v. Jeffboat, Inc.*, 746 F.2d 365 (7th Cir.1984), a case which neither party cites, involved the issue of whether the plaintiffs had been retaliated against for their participation in "Black Days," which was a series of protests against Jeffboat's allegedly discriminatory practices. The district court found no retaliatory motive in the actions Jeffboat took against the plaintiffs, reasoning that Jeffboat treated the plaintiffs' absenteeism and tardiness on "Black Days" as the terms of the applicable collective bargaining agreement so prescribed. *Id.* at 373. In rejecting this finding and ordering a remand on the issue of whether the protests were "protected activity," the Seventh Circuit issued the following instruction: "Whether the retaliatory action taken by the employer was authorized by the collective bargaining agreement would not appear to be dispositive, or even highly relevant [to the question of whether the retaliation was unlawful]." This instruction, although arguably dictum, suggests that the question of whether employer action is retaliatory is not answered by reference to the terms of a collective bargaining agreement. As already explained by the court, action which is otherwise illegal (such as retaliation) is not automatically deemed legal because authorized by a collective bargaining agreement. It is legal only if the actions authorized by the agreement are motivated by legitimate, nondis-

criminatory reasons, an issue which the court need not and does not reach here. Therefore, the EEOC's claim that Article 17.2 violates the ADEA must survive the Board's motion to dismiss.

### Conclusion

The Board's motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) is denied.

It is so ordered.