EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES and University Professionals of Illinois, Defendants.

No. 86 C 0295.

United States District Court, N.D. Illinois, E.D.

Feb. 14, 1989.

---

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

The plaintiff Equal Employment Opportunity Commission ("EEOC") brought this action against the Board of Governors of State Colleges and Universities ("the Board") and University Professionals of Illinois ("the Union") under section 4(d) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d) (1982). The suit seeks to enjoin the defendants from discriminating against those Board employees who file charges or complaints under the ADEA. Currently before the Court is the EEOC's motion for partial summary judgment on the issue of liability. For the reasons set forth below, that motion is denied.

### Background

The Board, which operates five public universities in the State of Illinois, *see* Ill. Rev.Stat. ch. 144, paras. 1001–1017 (1987), and the Union, which represents academic employees at those universities, are parties to a collective bargaining agreement ("CBA").[1] Article 17.2 of the CBA, the

---

1. The Board and the Union have entered a ser-  ies of CBAs, but each CBA is apparently the

article at issue in this case, provides in pertinent part as follows:

If prior to filing a grievance hereunder, or while a grievance proceeding is in progress, an employee seeks resolution of the matter in any other forum, whether administrative or judicial, the Board or any University shall have no obligation to entertain or proceed further with the matter pursuant to this grievance procedure.

Article 17.2 came into play in this case when the President of Northeastern Illinois University ("NIU") recommended that Raymond Lewis, an Associate Professor of Business Law, not be granted tenure. Plaintiff's Local Rule 12(e) Statement, Exhibit C ("Pltf's Exh. C"). On April 9, 1984, Lewis filed a grievance contending that the President had improperly interpreted and applied the evaluation criteria in making his decision and had been influenced by factors outside the evaluation criteria. Pltf's Exh. D. Lewis did not, however, specifically mention age discrimination. On May 3, 1984, the Board adopted the President's recommendation and denied Lewis tenure. It is not clear what, if anything, happened with regard to the grievance in the next year, but an arbitration hearing was scheduled for May 1985. Shortly before the hearing took place, on May 14, 1985, Lewis filed a charge with the EEOC, alleging that he had been denied tenure because of his age. Pltf's Exh. B. The Board did not learn of the charge until after the arbitration hearing, but when it did become aware of the charges, it indicated that it wished to invoke Article 17.2 and asked that the arbitrator not make his decision. Pltf's Exhs. E, F. After Lewis learned of this, he filed a second charge with the EEOC, dated June 13, 1985, alleging that the Board had retaliated against him for the filing of the ADEA charge. Pltf's Exh. G. The Board now claims that it later changed its mind and informed the

arbitrator that it had decided not to invoke Article 17.2. Affidavit of William H. Lieneman, Defendant's Local Rule 12(f) Statement, Exhibit 1 ("Def's Exh. 1"), ¶ 21. In addition, the Board claims that it subsequently reached a settlement with Lewis. *See* Affidavit of Thomas D. Layzell, Def's Exh. 2, ¶ 5.

On July 30, 1985, the EEOC issued a charge on behalf of Lewis and others similarly situated against NIU and the Board. On August 7, 1985, representatives from the EEOC and the Board met in order to discuss the charge. Each side now accuses the other of intransigence at this meeting and thereafter, and, as we discuss below, the Board argues that the EEOC did not truly attempt to conciliate, as required by section 7(b) of the ADEA, 29 U.S.C. § 626(b) (1982). At any rate, the EEOC subsequently informed the Board that it believed conciliation was unsuccessful, and on January 14, 1986, filed the present suit against the Board and the Union. The suit charges that at least since January 1, 1979, the Board has violated section 4(d) of the ADEA, 29 U.S.C. § 623(d) by terminating the grievances of those employees who filed charges or complaints under the ADEA. The effect of this practice, according to the EEOC, has been to deprive employees of a term or condition of employment, deterring them from exercising their rights under the ADEA. The EEOC, therefore, asks us to enjoin the Board from engaging in any practice that discriminates against employees who have asserted their ADEA rights, to order the Board to carry out programs that eradicate the effects of past and present unlawful practices, and to direct the Board to "make whole" those employees adversely affected by these practices.

After the suit was filed, the Board moved to dismiss for failure to state a claim upon which relief could be granted.[2]

---

same with regard to the provision at issue in this case. Accordingly, we will treat them as a single CBA.

**2.** The Board also asserted that the suit should be dismissed because the Court lacked subject matter jurisdiction, but never developed this posi-

tion. 28 U.S.C. § 1345. Clearly, we have jurisdiction under 28 U.S.C. § 1345 (1982) to entertain any suit brought by a federal agency expressly authorized to sue by Act of Congress, and the EEOC has been expressly authorized to

Judge Susan Getzendanner, to whom this case was then assigned, held that the complaint stated a claim and denied the motion to dismiss on April 22, 1987. *Equal Employment Opportunity Commission v. Board of Governors of State Colleges and Universities,* 665 F.Supp. 630 (N.D.Ill. 1987). We will discuss Judge Getzendanner's opinion in greater detail below, but a summary is appropriate here. At the outset, Judge Getzendanner, who has since left the bench, discussed several conflicting principles of law. First was the doctrine that a party is not required to submit any dispute to arbitration that it has not agreed to submit. In this case, however, the doctrine, derived from contract law and applied to labor law by the 1960 *Steelworkers Trilogy,*[3] conflicts with section 4(d) of the ADEA, 29 U.S.C. § 623(d), which prohibits discrimination against employees who bring charges under the ADEA. Also, the non-arbitration doctrine conflicts with the rule that any collective bargaining agreement must comply with federal law, especially those concerning discrimination, and that a union therefore cannot waive the rights of its members under an anti-discrimination statute such as the ADEA. *See* 665 F.Supp. at 633 (citing *UMWA Health & Retirement Fund v. Robinson,* 455 U.S. 562, 102 S.Ct. 1226, 71 L.Ed.2d 419 (1982); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *U.S. Equal Employment Opportunity Commission v. County of Calumet,*

686 F.2d 1249 (7th Cir.1982)). Judge Getzendanner concluded that this conflict must be resolved in favor of the employee's right to be free from discrimination. In addition, Judge Getzendanner concluded that Article 17.2 of the CBA constituted a waiver of employees' rights under the ADEA, because it "permits the employer to discriminate against employees who bring ADEA actions." 665 F.Supp. at 635. Finally, Judge Getzendanner rejected the Board's contention that Article 17.2 should be considered valid since it was motivated by a desire to avoid unnecessary duplication of effort. Judge Getzendanner considered the Board's contention as an affirmative defense and declined to resolve it on a motion to dismiss, since no record had yet been developed. Moreover, without deciding the issue, Judge Getzendanner cast doubt on the Board's implicit argument that a desire to avoid duplication of effort was legally sufficient to rebut a prima facie case of discrimination, an argument we discuss in great detail below.

After Judge Getzendanner denied the motion to dismiss,[4] the EEOC brought the present motion for partial summary judgment.[5]

### Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material facts and ... the moving party is entitled to a judgment as a matter of law."

---

sue by section 7 of the ADEA, 29 U.S.C. § 626 (1982).

In addition, it might be noted that Article 17.2 does not appear in the complaint. Nonetheless, the parties argued its effect in their briefs, and Judge Getzendanner discussed it in her opinion. Technically, Judge Getzendanner perhaps should have converted the motion to a motion for summary judgment under Rule 56, but since all parties were aware that Article 17.2 would be considered, there seems to have been no harm done.

3. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

4. When Judge Getzendanner left the bench, the case was reassigned to our calendar, and the parties completed briefing the motion in December 1987. We then referred the case to Magistrate Bernard Weisberg, in the hope that a settlement could be reached, but Magistrate Weisberg's efforts proved unsuccessful, and the case was returned to us.

5. We note that the Union answered the EEOC's complaint but has not otherwise participated in the suit. It has asked, however, that if we invalidate Article 17.2, we do so with regard to all employment discrimination statutes and not just the ADEA. Since we conclude in this opinion that there is insufficient reason to invalidate Article 17.2 under the ADEA, we need not consider this request.

Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### The Eleventh Amendment

■ The Board asserts that the eleventh amendment bars any ADEA claims against it,[6] but we disagree. In general, the eleventh amendment immunizes the states and their agencies against any suits in federal court, *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985); *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974), but Congress can abrogate the states' eleventh amendment immunity if it acts pursuant to section five of the fourteenth amendment, *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). The Seventh Circuit has concluded that the ADEA was passed pursuant to section five of the fourteenth amendment, *Equal Employment Opportunity Commission v. Elrod*, 674 F.2d 601, 603 (7th Cir.1982); under the Seventh Circuit's analysis, therefore, ADEA actions may be brought against state agencies such as the Board. The Board, however, argues that *Elrod* was wrongly decided. The Board notes that, although the Supreme Court has not definitively decided the issue, four members of the Court have argued that the ADEA was not—indeed, could not have been—passed pursuant to the fourteenth amendment. *See Equal Employment Op-*

*portunity Commission v. Wyoming*, 460 U.S. 226, 259–63, 103 S.Ct. 1054, 1072–75, 75 L.Ed.2d 18 (1983) (Burger, C.J., joined by Powell, Rehnquist and O'Connor, JJ., dissenting). Perhaps, when squarely faced with the issue, the Supreme Court will hold that Congress was not acting under the fourteenth amendment when it passed the ADEA. But until that happens, or until the Seventh Circuit changes its mind, we are bound to follow the Seventh Circuit's resolution of the issue in *Elrod*. We accordingly conclude that the eleventh amendment does not bar this suit.

### Conciliation

■ The Board also argues that there is a genuine issue of material fact concerning the EEOC's attempt to conciliate the issue. Section 7(b) of the ADEA, 29 U.S.C. § 626(b), provides that "[b]efore instituting any action under this section, the [EEOC] shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of [the ADEA] through internal methods of conciliation, conference, and persuasion." As suggested above, the parties disagree about the EEOC's attempt to conciliate the claim, and the Board has presented evidence that may create a factual issue concerning the EEOC's good faith in the conciliation process. Yet even if a factual issue has been raised, we conclude that dismissal is unnecessary here. Section 7(b) of the ADEA vests a court with broad discretion "to grant such legal or equitable relief as may be appropriate to effectuate the purposes" of the ADEA. 29 U.S.C. § 626(b). Relying on this language, a number of courts have held that when the EEOC has failed to conciliate an ADEA claim before bringing suit, the proceedings may be stayed so that conciliation may be attempted. *Marshall v. Sun Oil Co. (Delaware)*, 605 F.2d 1331, 1338 n. 8 (5th Cir. 1979); *Marshall v. Sun Oil Co. of Pennsylvania*, 592 F.2d 563, 566 (10th Cir.),

---

6. The Board labels its eleventh amendment argument as an affirmative defense, just as it does with the conciliation argument that we discuss in the next section. However, our agreement with the Board on either of these issues would

preclude the consideration of any other issues in this case; accordingly, we will deal with the eleventh amendment and the conciliation arguments up front.

*cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); *Brennan v. Ace Hardware Corp.,* 495 F.2d 368, 376 (8th Cir. 1974); 3 A A. Larson & L. Larson, *Employment Discrimination* § 102.24(b) at 21–244 (1988). As a general matter, this rule is sound. But because we referred this matter to Magistrate Weisberg to attempt settlement and because his attempts were unsuccessful, despite five settlement conferences over the course of eight months, the application of the general rule would be inappropriate here. Therefore, even if the EEOC failed to conciliate the claim—a question we do not decide—staying the litigation at this late date would appear to be fruitless and would not "effectuate the purposes" of the ADEA.[7]

### Adverse Employment Action

■ That brings us to the substance of the EEOC's complaint. Section 4(d) of the ADEA provides in pertinent part as follows:

> It shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA].

29 U.S.C. § 623(d). The EEOC claims that Article 17.2 runs afoul of this provision, since employees like Raymond Lewis who file charges with the EEOC lose their right to have an in-house arbitration of grievances. In response, the Board asserts that Article 17.2 does not violate the ADEA, because it was adopted in a good faith effort to avoid duplication of effort. In addition, the Board claims that the EEOC failed to meet its burden concerning Professor Lewis, since his grievances were ar-

bitrated, albeit after a short delay. We will return to the Board's good faith argument shortly, but we must first determine whether there was any adverse employment action taken here at all.

The Board admits—by its silence, *see* Local Rule 12(m)—that on May 30, 1985, it asked the arbitrator to postpone further consideration of Lewis' grievance until it had decided whether to invoke Article 17.2. *See* Pltf's Exh. F. The Board also admits that it did decide to invoke Article 17.2 and informed the arbitrator of that decision on June 13, 1985. *See* Pltf's Exh. E. However, the Board now presents evidence that on June 28, 1985, it told the arbitrator that it had changed its mind, and that the arbitration should proceed. Affidavit of William H. Lieneman, Def's Exh. 1, ¶ 21. According to the Board's Chancellor, Lewis and the Board subsequently reached a settlement on Lewis' claims. Affidavit of Thomas D. Layzell, Def's Exh. 2, ¶ 5.

Based on the evidence that it has presented, the Board argues, and we agree, that a genuine issue of fact exists as to whether the Board took any adverse action. The evidence presented by the Board, if believed, would tend to show that Lewis' entitlement to arbitration was not lost, but only delayed. Moreover, the delay was for less than a month, from May 30 to June 28; in light of the unexplained thirteen-month delay between the filing of Lewis' grievance and the arbitration hearing, this one-month delay seems insignificant. The EEOC presents no evidence of other employees whose grievances were terminated for filing an ADEA claim, or who were deterred from filing such a claim. In the absence of such evidence, summary judgment is inappropriate, at least with regard to past violations of the ADEA.

---

**7.** Our resolution should in no way be read to denigate the importance of conciliation. Wherever possible, enforcement should be effected without resort to formal litigation. *See Sun Oil Co. of Pennsylvania,* 592 F.2d at 565. As the Eighth Circuit has stated:

> Although the availability of and resort to courts allow for a method of resolving conflicts, the framework of a free people and the functioning of their government depends not essentially upon the courts, but upon the de-

sire of the people to agree within the framework of their law and to compromise the differences outside the walls of a courtroom. The voluntary compliance provisions recognize this principle and also wisely perceive that conciliation is a difficult process in which exhaustive, affirmative action, in this situation initiated by the Secretary, is demanded to achieve resolution without the necessity of legal action.

*Ace Hardware Corp.,* 495 F.2d at 375.

That does not end our inquiry, however, because the EEOC is not merely seeking to remedy past violations of the ADEA; it is also attempting to prevent violations in the future. The EEOC claims that Article 17.2 would violate the ADEA if it were applied, and therefore asks us to enjoin the Board from applying it. Certainly, the loss of in-house arbitration of grievances would constitute an adverse employment action. Accordingly, we must go on to consider whether Article 17.2 violates the ADEA.

### Direct or Indirect Evidence

The parties disagree over how such a violation of the ADEA should be proved in this case. In general, there are two ways of proving employment discrimination, by direct or circumstantial evidence on the one hand or by indirect [8] evidence on the other. *See Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988). Where a plaintiff attempts to prove a case by indirect evidence, he or she may utilize the burden-shifting method of proof first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Oxman*, 846 F.2d at 452 (*McDonnell Douglas* burden-shifting applied to ADEA cases); *Collins v. State of Illinois*, 830 F.2d 692, 702 (7th Cir.1987) (*McDonnell Douglas* burden-shifting applied to retaliation claims). In a retaliation case, the burden-shifting works as follows:

> Plaintiff has the burden of establishing a prima facie case of retaliation. The burden then shifts to defendants to articulate a legitimate nondiscriminatory reason for the challenged action. If defendants make that articulation, the burden shifts back to plaintiff to prove that the defendants' proffered reason is a pretext for an underlying retaliatory reason.

*Collins*, 830 F.2d at 702.

By contrast, when the plaintiff presents direct evidence of discrimination, the *McDonnell Douglas* burden-shifting method need not be applied. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985). In such a case, the employer must either rebut that direct evidence or present an affirmative defense. *See id.* at 122, 105 S.Ct. at 622. Of course, if the defendant presents an affirmative defense, the court must evaluate both its legal and factual sufficiency.

The parties have spilled a lot of ink over which method we should apply here. The EEOC argues that Article 17.2 constitutes direct evidence of retaliation, so that the shifting of burdens is not necessary. The Board responds that Article 17.2 is not direct evidence of retaliation, since it was adopted in good faith, and that the *McDonnell Douglas* method of proof must therefore be applied.

We conclude, however, that the parties have wasted their efforts on this issue, for the method of proof does not make a difference in this case. If we consider Article 17.2 as direct evidence of retaliation, we would then have to consider the factual and legal sufficiency of the Board's principal affirmative defense, its good faith in instituting the provision. If, on the other hand, we apply the *McDonnell Douglas* burden-shifting method, the analysis would be more elaborate, but the result would be the same. We would first determine whether the EEOC has made a prima facie case of retaliation. To establish a prima facie case, the EEOC must show that (1) an employee engages in statutorily protected activity, such as the filing of a charge with the EEOC; (2) the employer takes an adverse action against the employee; and (3) there is a causal link between the protected expression and the adverse action. *Collins*, 830 F.2d at 702; *Jennings v. Tinley Park Community Consolidated School*

---

**8.** We follow the Seventh Circuit's lead in drawing a distinction between circumstantial and indirect evidence, *see, e.g., Oxman*, 846 F.2d at 452, but we note that the distinction is not clear and only muddies an already confusing area of the law. Presumably, indirect evidence is that evidence which calls for the application of the burden-shifting method of proof described in the text. Such evidence, however, would appear to be merely another form of circumstantial evidence. It is not readily apparent where the line should be drawn between indirect evidence, which requires the shifting of evidentiary burdens, and other circumstantial evidence, which does not.

*District No. 146,* 796 F.2d 962, 966–67 (7th Cir.1986); *Klein v. Trustees of Indiana University,* 766 F.2d 275, 280 (7th Cir. 1985). Clearly, Article 17.2 meets all three elements: (1) when an employee files an EEOC charge, (2) the Board takes an adverse action by refusing to proceed with in-house arbitration (3) because of Article 17.2. We conclude, as Judge Getzendanner concluded, *see* 665 F.Supp. at 635, that the EEOC has established a prima facie case, and that the burden is therefore shifted to the Board to articulate a legitimate nondiscriminatory reason for Article 17.2. Again, the Board relies on its purported good faith. We must determine whether that is legally sufficient to shift the burden back to the EEOC to present evidence that the Board's good faith is a pretext. In short, no matter which method of proof we employ, we must determine whether the Board's good faith is legally sufficient; if it is, we must then determine whether the evidence the Board presents to substantiate its good faith is factually sufficient or is merely a pretext.[9]

### The Board's Good Faith

■ The Seventh Circuit has stated that "[i]f [an employer] acted in good faith, it cannot be logically held to have retaliated against [an employee]." *Rose v. Hearst Magazines Division, The Hearst Corp.,* 814 F.2d 491, 493 (7th Cir.1987). The Board claims that this passage clearly indicates that good faith is a sufficient affirmative defense to a charge of retaliation. We agree, but we do so with some reluctance.

Our reluctance springs from three sources. First, we note that the Seventh Circuit's statement comes from a case with a questionable holding. In *Rose,* the employee alleged, *inter alia,* that he was suspended and discharged in retaliation for filing age discrimination charges with the EEOC and with the Illinois Fair Employment Practices Division. The case was submitted to a jury with special verdict questions, two of which read as follows:

1. Do you find that plaintiff proved by a preponderance of the evidence that the filing of age discrimination charges was a determining cause for his discharge?

\*   \*   \*   \*   \*   \*

3. Do you find that plaintiff proved by a preponderance of the evidence that defendant "willfully" violated the age discrimination law when it discharged plaintiff?

In response to question number 1, "The jury answered 'yes,' finding that Rose [the employee] was terminated in retaliation for filing the age discrimination charges. In response to [question number 3], however, the jury answered 'no,' finding that the retaliation was not willful." *Rose,* 814 F.2d at 493. The Seventh Circuit concluded that the two special verdicts were "hopelessly irreconcilable." "The jury found that Hearst's [the employer's] violation of the Act was nonwillful. If Hearst acted in good faith, it cannot be logically held to have retaliated against Rose." *Id.* The court therefore remanded the retaliation claim to be tried again.

The court's conclusion poses some difficulties. True, retaliation has to be deliberate or willful, in the usual way that term is used. But "willful" has a special meaning in the ADEA relating to liquidated damages and the statute of limitations. Section 7(b) of the ADEA, 29 U.S.C. § 626(b), provides that "liquidated damages shall be payable only in cases of willful violations of [the ADEA]." In addition, section 7(e)(1), 29 U.S.C. § 626(e)(1), incorporates the statute of limitations found in the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 255 (1982). The FLSA, in turn, provides a two-year statute of limitations, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." The courts have interpreted "willful," as used in these provisions, to refer to what level of knowledge the employer has about the ADEA and whether its conduct

---

9. If we had to make a choice, we would consider this a direct evidence case, since Article 17.2, like the policy challenged in *Thurston,* is "dis-criminatory on its face." *See Thurston,* 469 U.S. at 121, 105 S.Ct. at 622. But, as suggested in the text, we do not need to make a choice.

violates the statute. Just this past term, the Supreme Court has clarified the standard for willfulness; an employer has committed a willful violation if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* —— U.S. ——, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). The standard in the Seventh Circuit at the time of the *Rose* decision was slightly different, *see Coston v. Plitt Theatres, Inc.,* 831 F.2d 1321, 1327 (7th Cir.1987) ("knew or reasonably should have known that its violations were in violation of the law"), *vacated,* —— U.S. ——, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988), but under either standard, it seems that an employer can violate the ADEA without "willfully" violating the statute. Thus, under the facts of the *Rose* case, it seems possible that the employer fired the employee for bringing a charge before the EEOC, yet not known that such retaliation was illegal under the ADEA; the employer would have violated the ADEA, but not "willfully." Accordingly, it appears that the two jury verdicts in *Rose*—that the employer fired the employee in retaliation, but that the employer did not willfully violate the ADEA—were not "hopelessly irreconcilable."[10]

Our second problem involves the nature of a violation under section 4(d) of the ADEA. Section 4(d) cases are generally labeled retaliation or retaliatory discharge cases, which implies that the employer must act with some type of malice or animus toward the employee. Yet section 4(d) says nothing about retaliatory animus. Rather, it merely states that "[i]t shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has made a charge." To be sure, in all of the section 4(d) cases we have seen, the employee's theory was that the employer was motivated by retaliatory animus, and this was certainly true in

*Rose.* But on its face, at least, section 4(d) does not seem to require such animus.

Our last difficulty with applying the Seventh Circuit's statement to the present case is Judge Getzendanner's previous opinion. Judge Getzendanner strongly hinted that she believed Article 17.2 violated the ADEA:

Not only is the factual sufficiency of the duplication justification in dispute, but its legal sufficiency is also in doubt. First, this type of justification does not actually rebut the EEOC's claim that the Board has discriminated against those employees who exercise their EEOC rights. Rather, it is an assertion that this sort of non-malicious discrimination ought to be acceptable. It is unclear whether § 4(d) regards this sort of discrimination as acceptable, even if it saves the employer and the union scarce resources. Presumably, the legislative judgment behind § 4(d) is that any discrimination against an employee who exercises his ADEA rights may so deter the exercise of those important rights that it is worth prohibiting that sort of discrimination. *Cf. Pettway v. American Cast Iron Pipe Company,* 411 F.2d 998 (5th Cir.1969) (describing purpose behind retaliation provision of Title VII). Second, the Supreme Court in *Alexander [v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed. 2d 147 (1974)] seemed to expressly contemplate that duplication of decisional efforts would be an acceptable consequence of its holding in that case. The Court observed that "legislative enactments in this area [of civil rights] have long evinced a general intent to accord parallel or overlapping remedies against discrimination." *Alexander,* 415 U.S. at 47, 94 S.Ct. at 1019. This led the Court to conclude:

We think, therefore, that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices

---

10. Judge Manion has noted the anomalous holding in *Rose. See Coston,* 831 F.2d at 1338 n. 1 (Manion, J., concurring). We recognize that the Seventh Circuit's conclusion—that a finding of good faith precludes a finding of retaliation

under the ADEA—may still be correct, even if its premise—that retaliation under the ADEA is necessarily "willful"—is mistaken. But the mistaken premise at least casts some doubt on the validity of the conclusion.

can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII.

*Id.* at 59–60, 94 S.Ct. at 1025. Thus, this court has its doubts as to whether the Board's desire to avoid duplicative efforts, even if factually supportable, is a valid justification for treating employees differently simply on account of their decision to exercise their employment discrimination rights.

665 F.Supp. at 635–36. This paragraph is not a holding of the case, since it was couched only in terms of Judge Getzendanner's "doubts" about the Board's defense. But is is rather strong dicta and seems intended as a broad hint to the EEOC to move for summary judgment. In short, it is almost, if not quite, the law of the case, and in the absence of the Seventh Circuit's contrary language in *Rose*, we would be reluctant to reverse course and disagree with Judge Getzendanner's conclusion.

However, we cannot ignore *Rose*[11] and its statement that "[i]f [an employer] acted in good faith, it cannot be logically held to have retaliated against [an employee]." Even though we have our doubts about that decision, we are compelled to follow it. Therefore, in light of *Rose*, we conclude that good faith is a defense to actions brought under section 4(d) of the ADEA.

### Factual Sufficiency

We also conclude that the Board has presented sufficient evidence to raise a genuine issue concerning its good faith. Thomas Layzell, the Chancellor of the Board, states as follows in his affidavit:

There were two principal reasons why the Board and Union have agreed to such a provision in all their agreements. First, the provision allows both the Board and the Union to conserve their limited resources. The Board has its budget appropriated annually by the State. Because the Board agreed voluntarily to a grievance procedure and because such a procedure is costly the Board did not want to be in the position of duplicating time, effort and money by participating in two proceedings involving a matter. Second, the Board recognized that a possibility existed that inconsistent results might be reached if a matter was processed both in a grievance/arbitration hearing and in another forum. Neither the Board nor the Union have [sic] ever intended or thought that such a provision night [sic] be considered "retaliation" against any person for filing any kind of charge with any agency.

Affidavit of Thomas D. Layzell, Def's Exh. 2, ¶ 4. Chancellor Layzell's statement is sufficient to present a genuine issue concerning the Board's good faith, and since the EEOC presents no evidence to the contrary, summary jugment must be denied.[12]

### Further Proceedings

In any further proceedings in this case, the EEOC will need to present contrary evidence if it hopes to rebut the Board's affirmative defense (or, if one prefers the *McDonnell Douglas* language, if it hopes to show that the Board's desire to avoid duplication of effort is a mere pretext). It is not clear if the EEOC can do this; we tend to think that it cannot.[13] Accordingly, and in light of our "widely acknowledged ... power to enter summary judgment *sua sponte*, so long as the losing party [is] on notice that she [has] to come forward with all of her evidence," *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the EEOC is given twenty days to come forward with evidence tending to rebut the Board's affirmative defense or to show why discovery

---

**11.** Judge Getzendanner issued her opinion less than one month after the *Rose* decision came down, and she appears to have been unaware of the Seventh Circuit's opinion.

**12.** Given our resolution of the EEOC's motion, we need not consider any of the Board's other affirmative defenses.

**13.** In fact, in its memorandum in support at 8, the EEOC seems to concede that the Board acted in good faith, but the concession may only have been for the purposes of this motion.

would be useful on the issue. If the EEOC fails to do so, summary judgment will be entered in favor of the Board and the Union. Perhaps at that time, the Seventh Circuit will get a chance to reconsider its decision in *Rose.*

### Conclusion

For the reasons set forth above, the EEOC's motion for partial summary judgment is denied. The EEOC is given twenty days to come forward with the evidence tending to rebut the Board's affirmative defense of a good faith desire to avoid duplication of effort, or to show why discovery would be useful on the issue. If the EEOC fails to do so, we will enter summary judgment in favor of the Board and the Union on the entire complaint. It is so ordered.