**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellee,**

v.

**J.M. HUBER CORPORATION,
Defendant–Appellant.**

No. 90–2046.

United States Court of Appeals,
Fifth Circuit.

Sept. 17, 1991.

Anthony J. Sadberry, Sullivan, King &
Sabom, Houston, Tex., for defendant-appel-
lant.

Jerome N. Scanlan, Regional Atty.,
E.E.O.C., Houston, Tex., Lamont N. White,
Washington, D.C., for plaintiff-appellee.

ON SUGGESTION FOR REHEARING
EN BANC

Before GARWOOD and WIENER,
Circuit Judges, and VELA,* District Judge.

PER CURIAM:

Treating the suggestion for rehearing en banc as a petition for panel rehearing, it is ordered that the Petition for Rehearing filed on behalf of the Equal Employment Opportunity Commission (EEOC) in the above entitled and numbered cause be and same is hereby DENIED. No member of the panel nor Judge in regular active service of this Court having requested that the Court be polled on rehearing en banc (Federal Rules of Appellate Procedure and Local Rule 35), the suggestion for Rehearing En Banc is DENIED.

Because this panel's opinion in *Huber* was filed for release before dissemination of the Supreme Court's opinion in *International Union, UAW, v. Johnson Controls, Inc.,*[1] we are constrained to respond to the EEOC's Petition for Rehearing with something more than a simple denial. We address below the two principal issues raised by the EEOC in its application: first, whether our opinion in *Huber* is inconsistent with our earlier opinion in *Cosmair*[2]; and, second, whether *Huber* is inconsistent with *Johnson Controls.*

## I.

### COSMAIR

In the instant case this panel held in essence that Huber's policy of withholding a former employee's distributable benefits under a qualified retirement plan when the former employee challenges termination by filing a Title VII charge and seeks rein-

statement does not on its face violate Title VII's prohibition against retaliation. Despite our distinguishing discussion in *Huber*, the EEOC still contends that our opinion is inconsistent with *Cosmair*, in which we noted that if the employer stopped providing a former employee "benefits to which he was otherwise entitled simply because he filed a charge, the company would be guilty of retaliation."[3] But in *Huber* we distinguished *Cosmair* on the basis that "Huber did not withhold [the employee's] benefits *simply because* [the employee] had filed a Title VII charge—Huber contends that it withheld benefits to preserve the tax qualified status of its benefit plan under ERISA. Huber's position is supported at least facially by showing that benefits were withheld routinely from all severed employees who contested severance for any reason, not merely those whose contests were based on Title VII discrimination, if such contests could lead to reinstatement."[4] The EEOC here reiterates its argument that Huber's policy of withholding amounts due to former employees under the benefit plan is "facially discriminatory," making *Cosmair* controlling. We disagree, remaining steadfast in our view that *Cosmair* is distinguishable.

*Cosmair* does not reach the question whether the employer lawfully could have suspended payments if the employee's filing of the EEOC charge breached the release executed by the employee in connection with severance.[5] We held that such a filing of charges did not breach the release because the release did not prohibit filing an EEOC claim.[6] We pointed out that EEOC "charges can be filed by persons other than the employee who allegedly suffered the discrimination," that the charge filed "contained no demand for relief,"[7] and that the charge indeed "named two co-workers who allegedly had been fired ...

---

* District Judge of the Southern District of Texas, sitting by designation.

1. —— U.S. ——, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991) dated March 20, 1991.

2. *EEOC v. Cosmair,* 821 F.2d 1085 (5th Cir. 1987).

3. *Cosmair,* 821 F.2d at 1089.

4. *Huber,* at 1327.

5. *Cosmair,* 821 F.2d at 1089.

6. *Id.*

7. *Id.*

because of age discrimination." [8] We went on to note in *Cosmair* that there was evidence that the parties intended by the release—although it did not say so expressly—to prevent the filing of an EEOC charge[9], and we held that as so construed such a provision of the release was void as against public policy.[10]

This latter holding in *Cosmair* was not meant to proscribe a release provision that precluded the employee from seeking through the EEOC his own reinstatement or back wages (as distinguished from an EEOC action to stop some ongoing discriminatory practice or procuring back wages or reinstatement for others). If that were the proper interpretation of our opinion, it would have had the effect of holding a release of an ADEA claim invalid, which we did not do. *Cosmair* cannot be read as necessarily invalidating a release that bars the party executing it from claiming through the EEOC only relief for himself from the employer.

Along the same lines the EEOC would rely on our decision in *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir.1969). In *Pettway* we held that the employer violated Title VII's anti-retaliation provision by discharging the employee who filed an EEOC claim based on allegations of malicious and false statements, regardless of the employer's underlying justification for doing so. Like *Cosmair*, however, *Pettway* is another "simply because" case and is distinguishable from *Huber* on that basis.

## II.

### JOHNSON CONTROLS, INC.

■ Citing *Johnson Controls*, the EEOC disputes our holding that the Huber policy should be treated as a facially neutral policy with a disparate impact because the employer may not have had a malevolent motive. Huber's policy, claims the EEOC, is facially discriminatory so motive is irrelevant.

In *Johnson Controls*, the Supreme Court analyzed whether a policy that excluded "women who are pregnant or who are capable of bearing children" from holding "jobs involving lead exposure" violates Title VII.[11]

The summary judgment evidence in that case indicated that lead exposure affected the reproductive abilities of both men and women, and that such effects are as great as the effects of exposure to the fetus. The Seventh Circuit analyzed the policy of excluding fertile women as a facially neutral policy which only had a discriminatory effect on the employment opportunities of women. Consequently, that court looked to see if the employer had established that its policy was justified as a business necessity.

In reversing the Seventh Circuit the Supreme Court held that the employer's policy was facially discriminatory finding that "[t]he policy classified on the basis of gender and childbearing capacity, rather than fertility alone" and therefore applied to fertile women but not to fertile men.[12] Because the employer's policy was facially discriminatory—and, more significantly for current purposes, discriminated on the basis of *gender*—the Supreme Court concluded that the Seventh Circuit erred in applying the "business necessity defense" framework instead of the Bona Fide Occupational Qualification (BFOQ) analysis mandated by Section 703(e)(1) of Title VII.[13]

Section 703(e)(1) provides that an employer may discriminate on the basis of "religion, sex, or national origin in those instances whe[n] religion, sex or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enter-

---

8. *Id.* at 1090.

9. *Id.* at 1089–90.

10. *Id.* at 1090.

11. *Johnson Controls, Inc.*, 111 S.Ct. at 1200.

12. *Johnson Controls, Inc.*, 111 S.Ct. at 1203.

13. Actually the Seventh Circuit held that even if BFOQ was the proper standard, the employer's policy met the test.

prise." Thus, the BFOQ analysis under Section 703(e)(1) applies only to policies that are facially discriminatory on the basis of sex, national origin, or religion. For that reason, when the Supreme Court noted in *Johnson Controls* that "absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect," [14] the Court was explaining that motive is irrelevant *under Section 703(e)(1)* in determining whether a policy is facially discriminatory and must be analyzed under the BFOQ test rather than the business necessity defense.

By failing to recognize (or acknowledge forthrightly) that the BFOQ analysis is mandated under 703(e)(1) only for policies that are facially discriminatory *on the basis of gender, national origin or religion,* the EEOC misplaces its reliance on *Johnson Controls.* Clearly, Huber's policy does not involve sex, national origin, or religion, and thus is not within the ambit of Section 703(e)(1). The employer's policy in *Johnson Controls* excludes the protected class (women) from certain jobs; the Huber policy, if offending at all, would involve retaliation unrelated to sex, national origin, or religion.

Anti-retaliation cases, as distinguished from Section 703(e)(1) cases, are not governed by the BFOQ analysis. The only available avenues in an anti-retaliation case which does not turn on gender, national origin, or religion are (1) to proceed under a per se violation theory, or (2) to apply the business necessity defense, determining whether the policy is significantly related to a legitimate business concern. As *Johnson Controls* focuses on whether the fetal protection policy was a facially discriminatory policy within the meaning of Section 703(e)(1) (which would require the application of BFOQ analysis) that case is of very limited applicability, if any, to anti-retaliation cases. It is clearly inapposite to the

facts and circumstances we consider in *Huber.*

 In arguing against facial neutrality, the EEOC insists that this court was wrong in analyzing *Huber* as a "disparate impact" case. Instead, urges the EEOC, we should have analyzed the case as a "disparate treatment" case and, as such, a per se violation. To explain its position, the EEOC states that the disparate impact theory applies only to policies that are facially neutral, and that Huber's policy is not facially neutral because on its face it applies to all Title VII claimants. Citing policies verbalized in *Griggs v. Duke Power,* [15] and *Dothard v. Rawlinson,* [16] the EEOC contends that the proper way to test for facial neutrality of a policy is simply to read the plain wording of the policy to see if individuals protected by Title VII would be affected. The EEOC concludes that a clear reading of the Huber policy reveals that each and every Title VII claimant will be affected, so that the policy is not facially neutral. We disagree; the EEOC fails to administer its own test correctly.

The flaw in the EEOC's logic is its insistence that Huber's policy would affect every Title VII claimant. First, the policy obviously does not affect EEOC complaints concerning denial of promotion, wage discrimination, or the like. Neither does it affect EEOC complaints about other employees' discharges. The complaints in *Cosmair,* for example, named two co-workers fired because of age discrimination.

More importantly, Huber's policy does not even apply to every EEOC complaint of discharge of the complainant: The EEOC loses sight of the fact that, at least by clear implication, the Huber policy only applies to former employees who complain of discharge and fail affirmatively to eschew the possibility of reinstatement. When a former employee makes clear the fact that he is *not* seeking reinstatement, but only back wages, such as when a former employee obtains a new, satisfactory or preferable job, the policy is inapplicable.

---

**14.** *Johnson Controls,* 111 S.Ct. at 1203–04.

**15.** 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

**16.** 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).

In sum, the EEOC's contention that the Huber policy on its face applies to all EEOC complaints (or even to all EEOC discharge complaints) simply is not true. Although that policy reflects facially that it applies to all former employees who contest their termination for any reason (thus by definition including contests, based on Title VII retaliation, that seek reinstatement), the policy does not include the set of all EEOC discharge claims, much less all EEOC claims. As was the case in the facially neutral policy in *Dothard*,[17] (state imposed height and weight restrictions on job qualification; policy on its face did not single out women even though, facially, almost all women would be disqualified) the business necessity defense was the proper test for the *Huber* policy. As Huber argues, and we agree, its policy is distinguishable from the policy in *Johnson Controls* not only on the basis of Section 703(e)(1), but also because Huber's policy applied to all former employees who contested their terminations (and, implicitly, sought reinstatement) irrespective of cause, not just employees engaging in protected activities. Johnson Controls' policy, on the other hand, applied only to fertile women despite the acknowledged risk to fertile men, making it facially discriminatory on the basis of gender.

### III.

### CONCLUSION

For the reasons set forth above, *Huber* is distinguishable from both *Cosmair* and *Johnson Controls*. We therefore find no compelling reason to grant a rehearing.

17. *Id.*