**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,**

**v.**

**BOARD OF GOVERNORS OF STATE
COLLEGES AND UNIVERSITIES and
University Professionais of Illinois, De-
fendants–Appellees.**

**No. 90–2440.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1991.

Decided March 3, 1992.

As Amended March 3, 1992.

---

Gordon Waldron, Jason S. Hegy, E.E.O.C., Chicago, Ill., Paul D. Ramshaw (argued), E.E.O.C. Office of General Counsel, Washington, D.C., for E.E.O.C.

Stephen A. Yokich, Cornfield & Feldman, Edward B. Miller (argued), Pope, Ballard, Shepard & Fowle, Chicago, Ill., Mark T. Dunn, Dunn, Goebel, Ulbrich, Morel & Hundman, Bloomington, Ill., for Board of Governors of State Colleges and Universities.

Stephen A. Yokich, Cornfield & Feldman, Chicago, Ill., for University Professionals of Illinois.

Jill A. Goldy, Seyfarth, Shaw, Fairweather & Geraldson, Martha A. Churchill, Mid–America Legal Foundation, Chicago, Ill., for amicus curiae Illinois Chamber of Commerce.

Martha A. Churchill, Mid–America Legal Foundation, Chicago, Ill., for amicus curiae Society for Human Resource Management and Mid–America Legal Foundation.

Jill A. Goldy, James Baird, Krista S. Kaplan, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for National Public Employer Labor Relations Ass'n, Illinois Public Employer Labor Relations Ass'n.

Before CUMMINGS and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

The Equal Employment Opportunity Commission ("EEOC") brought this action to challenge the legality of a collective bargaining agreement provision that denies employees their contractual right to a grievance proceeding whenever the employee initiates a claim, including a claim of age-based discrimination, in an administrative or judicial forum. The policy in ques-

tion was adopted pursuant to a collective bargaining agreement between the Board of Governors of State Colleges and Universities ("Board"), an agency or instrumentality of the State of Illinois, and University Professionals of Illinois ("Union").[1] Under the collective bargaining agreement, when an employee files a charge or initiates a lawsuit the Board is authorized to halt existing or future grievance proceedings. The EEOC maintains that this policy violates Section 4(d) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d), which forbids discrimination against employees who have filed a charge, complaint or lawsuit under the ADEA. Accordingly, the EEOC has sought to enjoin the Board from enforcing its policy against employees who have filed charges or complaints under the ADEA. With much hesitation, the district court granted summary judgment for the Board on the basis of this Court's decision in *Rose v. Hearst Magazines Div., Hearst Corp.*, 814 F.2d 491 (7th Cir.1987). On appeal, this Court assumes jurisdiction under 28 U.S.C. § 1291. For the following reasons, we reverse.

## I.

Article 17.2 of the collective bargaining agreement between the Board and the Union ("Article 17.2") provides:

> If prior to filing a grievance hereunder, or while a grievance proceeding is in progress, an employee seeks resolution of the matter in any other forum, whether administrative or judicial, the Board or any University shall have no obligation to entertain or proceed further with the matter pursuant to this grievance procedure.

The EEOC contends that the Board's policy deprives ADEA claimants of a term or condition of employment and deters employees from exercising their rights under the ADEA. Because the provision prevents an employee from pursuing his griev-

ance with the Board if he wishes to file a charge with the EEOC, it assertedly violates Section 4(d) of the ADEA ("Section 4(d)"), which provides:

> It shall be unlawful for an employer to discriminate against any of his employees * * * because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d).

This lawsuit resulted in three district court opinions which are reported at 665 F.Supp. 630 (1987), 706 F.Supp. 1377 (1989), and 735 F.Supp. 888 (1990). The EEOC has dubbed them *BOG I*, *BOG II*, and *BOG III*, referring to the defendant Board of Governors. We adopt this nomenclature.

*BOG I* revealed that on April 9, 1984, Professor Raymond Lewis filed a grievance with the Union because the Northeastern Illinois University president had decided not to recommend Lewis for tenure, allegedly in violation of University procedure. Lewis's grievance claim took more than a year to process, and an arbitration hearing was set for May 20, 1985. Although he was reluctant to do so, the EEOC encouraged Lewis to file an age discrimination claim with the Commission. He filed such a claim on May 14, 1985. As he feared, this caused the Board to terminate his pending grievance under the above-quoted provision of the collective bargaining agreement, thus blocking the completion of pending arbitration of Lewis's tenure dispute under the collective bargaining contract. The Board instructed the arbitrator in the grievance procedure not to render a decision regarding Lewis's claim even though the arbitration hearing had concluded before the Board had learned of his EEOC claim. The Board's actions prompted the EEOC to bring the present case.[2]

---

**1.** As revealed in its appellate brief, the Union is neutral with respect to the merits of the case but will "agree to any change of contract required by a Court order in this case" (Br. 3). Our disposition of this case is binding as to the Union as well as to the Board.

**2.** After the EEOC threatened litigation, the Board reinstated Lewis's grievance proceeding. However, the Board's decision to reinstate the proceeding does not save Article 17.2 from judicial scrutiny. Article 17.2 has been employed against three other Board employees who filed

Former Judge Getzendanner held that the above-quoted provision of the collective bargaining agreement constituted a prima facie case of forbidden retaliation under Section 4(d) of the ADEA, so she denied the Board's motion to dismiss the complaint. She also concluded that an employer's contractual right not to arbitrate certain cases is subservient to employee rights under Title VII of the Civil Rights of 1964 ("Title VII") and the ADEA.

After Judge Getzendanner resigned from the judiciary, the case was assigned to Judge Aspen for further processing that resulted in *BOG II*. In that opinion the court denied the EEOC's motion for partial summary judgment on the issue of liability. The district judge first held that the Eleventh Amendment did not bar ADEA claims against the Board and refused the Board's request to stay the litigation because five settlement conferences with a magistrate judge had failed. Neither of these rulings has been challenged on appeal. The district court judge also refused to grant the EEOC's motion for partial summary judgment. In reaching his conclusion, Judge Aspen questioned both the reasoning and holding in *Rose v. Hearst Magazines Div., Hearst Corp.*, 814 F.2d 491 (7th Cir.1987), but felt constrained to follow dicta in that case. He therefore denied the EEOC's motion for summary judgment on the ground that the Board had raised a genuine issue concerning its good faith in adopting Article 17.2.

In *BOG III* the parties presented cross-motions for summary judgment. There Judge Aspen concluded that Article 17.2 was not invalid in the absence of evidence that the provision was adopted with intent to retaliate. There being no such evidence,

summary judgment was granted for the Board.[3] 735 F.Supp. at 890–891. Because we disagree that the *Rose* case requires such a result, we reverse.

## II.

■ Section 4(d) makes it unlawful for an employer to discriminate against an employee because he participated in an investigation, proceeding or litigation under the ADEA. Even though the explicit language in Section 4(d) prohibits "discrimination," this Court has referred to Section 4(d) claims as "retaliation" claims. Despite the Board's suggestion to the contrary, we do not distinguish the two terms because retaliation claims require proof of a greater level of animus than that required in discrimination claims. Instead, we use the terms as a shorthand way to distinguish substantive age discrimination claims from claims of discrimination based on the exercise of legal rights granted by the ADEA.[4] This shorthand characterization of discrimination claims and retaliation claims does not transform Section 4(d) into a narrower prohibition than that suggested by its statutory language. Nothing in Section 4(d) requires a showing of intent in retaliatory policy cases.

■ To the contrary, Section 4(d) is concerned with the effect of discrimination against employees who pursue their federal rights, not the motivation of the employer who discriminates. Section 4(d) explicitly prohibits discrimination against employees who engage in protected activity. When charged with unlawful retaliation in violation of Section 4(d), an employer may offer a legitimate non-discriminatory rea-

charges or complaints of discrimination, and whose grievance proceedings were terminated according to the challenged policy. Moreover, the Board has not modified the policy to exclude future ADEA claimants.

3. Two briefs have been filed by *amici curiae* urging affirmance. The first was for the Illinois Chamber of Commerce and the Society for Human Resource Management. The second was for the National Public Employer Labor Relations Association and the Illinois Public Labor Relations Association.

4. There is no necessity to employ the term retaliation rather than discrimination when addressing Section 4(d) claims. Cf. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (discussing "discrimination" under Section 704(a), Title VII's parallel provision to Section 4(d), even though courts routinely characterize Section 704(a) claims as retaliation claims). Consequently, we use these terms interchangeably.

son for taking an adverse action against an employee who has engaged in protected activity, *i.e.*, that the employer took the adverse action for some reason unrelated to the employee's participation in protected activity. However, the employer may not proffer a good faith reason for taking retaliatory action. For example, the Board's asserted justification for Article 17.2, avoiding duplicative litigation, does not rebut the claim that the Board discriminated against employees who engaged in protected activity. Rather the Board's justification alleges that non-malicious discrimination against employees ought not be legally prohibited. It is not for this Court to determine when retaliation is permissible. Congress already resolved that issue when it determined that "[i]t shall be unlawful for an employer to discriminate against any of his employees * * * because such individual * * * has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). Notably, Congress chose not to enact any affirmative defenses to a charge of retaliation, 29 U.S.C. § 623(f), and did not provide an exception to Section 4(d) when such discrimination would be rational or financially prudent.

It is immaterial that an employee might have overlapping contractual and legal remedies. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). In *Alexander* the Supreme Court observed that Congress intended to provide parallel and overlapping remedies against discrimination and specifically stated that "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective bargaining agreement and his cause of action under Title VII." [5] If the Board wants to lobby for a benign discrimination exception to Section 4(d), its appeal would be appropriately directed to Congress rather than this Court.

■ When an employee's participation in statutorily protected activity is the determining factor in an employer's decision to take adverse employment action, that action is invalid regardless of the employer's intent. If the employer's differential treatment of its employees is impermissible, the policy which provides for its differential treatment is invalid regardless of the employer's motivation for adopting or invoking the policy. Hence the Board's asserted good faith in discriminating against employees who file claims in administrative and judicial forums is entirely irrelevant.[6]

This Court's decision in *Rose v. Hearst Magazines Div., Hearst Corp.*, 814 F.2d 491 (1987), does not require a contrary conclusion. *Rose* concerned a jury verdict within ADEA's two-tier liability scheme. There the jury found that the employer had retaliated against its employee but found that such retaliation was not willful. This Court considered those two findings inconsistent and in dicta noted "[i]f [the employer] acted in good faith, it cannot logically be held to have retaliated against Rose." *Id.* at 493. In *Rose* we required the jury to find both retaliation and willfulness or neither—not because the ADEA's two-tier

---

5. This is particularly true where, as here, the contractual and legal proceedings involve different claims. *Id.* at 49, 94 S.Ct. at 1020. Lewis's grievance dispute concerns the Board's failure to adhere to its established tenure procedure. However, his EEOC claim alleges age discrimination.

6. Although a showing of willfulness is relevant to the second tier of damages under the ADEA, good faith may not even be relevant in that context. In *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court said that "a violation is 'willful' if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 128, 105 S.Ct. at 625. That standard also applies in this Circuit. *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir.1988) (overruling the "knew or should have known" standard set forth in *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149 (7th Cir.1981)). According to this standard the defendant may allege that it believed its policy was lawful, not that the purposes its policy sought to serve were benign.

damages proceeding is only a one-tier procedure in cases of retaliation, but because of the particular facts in the *Rose* case. There the employer "angrily chastised" the employee for filing an age discrimination claim and suspended him at that same meeting. *Id.* at 492. Under these circumstances, if the employer in *Rose* retaliated against its employee, the employer's flagrant conduct must also have amounted to reckless disregard for whether its conduct violated the ADEA. Retaliation claims in disparate treatment cases present the same dilemma of determining two-tier ADEA liability as disparate treatment claims. See *Burlew v. Eaton Corp.*, 869 F.2d 1063, 1066 (7th Cir.1989) (discussing difficulty of applying ADEA's two-tier structure to discrimination cases alleging disparate treatment).

Moreover *Rose*, which concerned an individual-disparate-treatment case, has been questioned in that context[7] and we decline to extend its rationale to this case which concerns a discriminatory policy. In discriminatory policy cases the employer's reasons for adopting the challenged policy are irrelevant to the policy's legality. *Burlew v. Eaton Corp.*, 869 F.2d 1063, 1065–1066 (7th Cir.1989) ("In a *Thurston*-type case, the factfinder can determine whether the plan or policy at issue is discriminatory without any inquiry into the defendant's state of mind."). As explained in another ADEA case, "if [the employer] stopped providing [the employee] benefits to which he was otherwise entitled simply because he filed a charge, the company would be guilty of retaliation." *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1089 (5th Cir.1987).[8]

In a retaliatory policy case an employer's alleged good faith is irrelevant, just as evidence of good faith has been held to be irrelevant in a case involving a discriminatory policy. As noted in *International Union, UAW v. Johnson Controls*, this Court had erroneously "assumed that because the asserted reason for the sex-based exclusion * * * was ostensibly benign, the policy was not sex-based discrimination. That assumption, however, was incorrect." —— U.S. ——, 111 S.Ct. 1196, 1203, 113 L.Ed.2d 158 (1991). Similarly, in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 129, 130, 105 S.Ct. 613, 621, 625, 626, 83 L.Ed.2d 523 (1985), the defendant's transfer policy was held to violate the ADEA even though the defendant was attempting to bring its policy into compliance with the ADEA and even though it "acted reasonably and in good faith." See also *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 737–739, 101 S.Ct. 1437, 1443–1444, 67 L.Ed.2d 641 (1981).

■ Having concluded that a retaliatory policy constitutes a *per se* violation of Section 4(d), we now examine whether Article 17.2 of the collective bargaining agreement is a retaliatory policy with respect to ADEA claimants. Under the collective bargaining agreement between the Board and the Union, an employee has a contractual right to an in-house grievance procedure.

---

7. *Rose* has been rejected by two other courts of appeals (*Grant v. Hazelett Strip–Casting Corp.*, 880 F.2d 1564, 1571 (2d Cir.1989) (holding that a finding of retaliation may also result in a finding of willfulness, but need not do so in every case); *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 636 (10th Cir.1988) (rejecting the view that "a finding against willfulness cannot consistently stand with a jury finding of intentional discrimination"), and indeed has been questioned here (*Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1338 n. 1 (7th Cir.1987) (Manion, J., concurring), vacated on other grounds, 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988), (finding no reason to impose single-tier liability in retaliation cases)).

8. The Fifth Circuit seems to have reached a holding inconsistent with *Cosmair* in *EEOC v.* *J.M. Huber Corporation*, 927 F.2d 1322, rehearing denied, 942 F.2d 930 (1991). However, that case does not involve the ADEA. Moreover, the *Huber* opinions deny any inconsistency with *Cosmair*. 927 F.2d at 1326–1327, 942 F.2d at 931–932. In any event, *Huber* is inconsistent with the Supreme Court's holding in *International Union, UAW v. Johnson Controls, Inc.*, —— U.S. ——, 111 S.Ct. 1196. There the Court held that "the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect." —— U.S. at ——–——, 111 S.Ct. at 1203–1204. To the extent that there is any inconsistency between *Cosmair* and *Huber*, we prefer the approach taken by Chief Judge Clark in *Cosmair*.

However, an employee loses that right if he files a charge of discrimination. Article 17.2 authorizes the Board to take an adverse employment action (termination of the in-house grievance proceeding) for the sole reason that the employee has engaged in protected activity (filing an ADEA claim). Under Article 17.2 an employee must forfeit his contractual right to a grievance proceeding, a condition of his employment, or surrender his legal right to participate in litigation under the ADEA. Conversely, an employee who elects to pursue his grievance with the Board may lose his right to bring his federal age discrimination claim. This is particularly evident in the present case, where the Board's grievance procedure took more than a year to reach the arbitration stage. Had Lewis decided to pursue his contractual remedies but ultimately found that resolution unsatisfactory, he might nevertheless have been barred from initiating his ADEA claim by the statute of limitations. 29 U.S.C. § 626.

■ The Board itself admits that Article 17.2 permits an employee to elect "either avenue of relief but not both" (Br. 9). The Board claims that an employee's loss of his contractual right to a grievance procedure is non-problematic because the employer had no obligation to provide its employees with a right to grievance procedures at all. However, in *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), the Supreme Court held that "[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free * * * not to provide the benefit at all." *Id.* at 75, 104 S.Ct. at 2234. Although the Board would be free not to provide grievance proceedings, the "participation clause" of Section 4(d) prohibits the employer from providing grievance proceedings only if an employee refrains from participating in activity that is protected under the ADEA. By inserting Article 17.2 in the collective bargaining agreement, the Board adopted a policy which impermissibly discriminates against

employees who file ADEA complaints. Therefore, as previously discussed, the Board's supposedly benign motivation for adopting the policy is irrelevant.

The Board challenges the characterization of its policy as discriminatory since Article 17.2 does not apply solely to employees who bring protected discrimination claims.[9] Instead, it applies to any employee who brings an employment-related action in a judicial or administrative forum. In support of its argument, the Board notes several types of unprotected activity that would also lead to adverse employment action. For example, an employee's decision to file a contract claim in a judicial forum would subject him to termination of his grievance proceeding.

■ However, the fact that an employer can deny grievance proceedings on the basis of participation in unprotected activity is entirely irrelevant. The Board may not deny grievance proceedings on the basis that employees have filed protected ADEA claims. A policy is discriminatory when it discriminates against members of a protected class on the basis of an impermissible factor. *Trans World Airlines v. Thurston*, 469 U.S. 111, 124, 105 S.Ct. 613, 623 (holding that "TWA's transfer policy discriminates against protected individuals on the basis of age, and thereby violates the [ADEA]"). The EEOC offered the following example of the principle that a discriminatory policy is no less so with respect to the protected class because non-protected persons are also adversely affected by the policy: a company adopts a policy which bans the hiring of anyone over 40 years of age. Clearly, that policy constitutes facial discrimination under the ADEA. *Id.* But if an employer enacts a policy that prohibits hiring anyone over 35 years of age, that policy would also constitute a discriminatory policy with regard to members of the protected class since all protected class members are excluded from employment because of age. It would be

9. Although this case exclusively concerns statutorily protected claims of age discrimination, an employee also enjoys statutory protection against retaliation when filing discrimination claims under Title VII. See 42 U.S.C. § 2000e–3(a).

incongruous for us to accept the Board's approach that the second policy did not amount to a policy of age-based discrimination against individuals over 40 solely because the policy also adversely affected individuals between the ages of 35 and 40. The members of the protected class are equally excluded by the first policy and by the second, and under either policy the protected class suffers discrimination based on age. Likewise, if Article 17.2 authorized the Board to terminate grievance proceedings if and only if an employee filed an ADEA claim with the EEOC, that policy would be clearly discriminatory under Section 4(d). The contention that the policy is any less discriminatory when its scope is broadened is unpersuasive. Employees' rights under Section 4(d) would be as effectively stifled under either policy. Moreover, in either case members of the protected class would lose their right to grievance proceedings because they had filed ADEA claims.

In both the EEOC hypothetical and the case at bar, the use of an impermissible criterion (age or participation in protected legal rights) as a determining factor invalidates the policy with respect to the protected class. Furthermore, it would be inappropriate to suggest that each member of the protected class file an individual-disparate-treatment claim pursuant to the *McDonnell Douglas Corp. v. Green*[10] burden-shifting method because the adverse employment action stemmed from a discriminatory policy, not an individual decision. Were we to adopt the Board's argument that a policy imposing adverse treatment on all members of a protected class was rendered non-discriminatory by the inclusion of some members outside the protected class, employers could consistently employ discriminatory criteria as long as they were careful to draw their discriminatory lines broadly enough to include members of a non-protected class.

**10.** 411 U.S. 792, 93 S.Ct. 1817.

**11.** While the Supreme Court recently held that ADEA claims may, in some circumstances, be subject to compulsory arbitration, it expressly

### III.

In sum, Section 4(d) prohibits policies that penalize employees who exercise their statutory rights under the ADEA. A collective bargaining agreement may not provide that grievances will proceed to arbitration only if the employee refrains from participating in protected activity under the ADEA. Nor may the Board successfully argue that unions be permitted to waive an employee's rights under the ADEA, for it is well established that unions cannot waive employees' ADEA or Title VII rights through collective bargaining. *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 737–739, 101 S.Ct. 1437, 1443–1444; *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 51, 94 S.Ct. 1011, 1021; *Bartman v. Allis–Chalmers Corporation,* 799 F.2d 311, 315 (7th Cir.1986), certiorari denied, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *EEOC v. County of Calumet,* 686 F.2d 1249, 1256–1257 (7th Cir.1982).[11]

To hold for the Board would allow it to deter its employees' exercise of their ADEA rights by imposing adverse employment consequences. Statutory provisions against retaliation such as those in the ADEA and Title VII protect employees' right to participate in protected activity and aid the work of the EEOC which depends upon employee cooperation. Cf. *Pettway v. American Cast Iron Pipe Company,* 411 F.2d 998 (5th Cir.1969). Consequently, we fully agree with the conclusion in *BOG I* that Article 17.2 violates Section 4(d) with respect to ADEA claimants (665 F.Supp. at 637) because it is discriminatory on its face (*BOG II,* 706 F.Supp. at 1384 n. 9).

Reversed and remanded for entry of appropriate injunctive relief in favor of the EEOC.

MANION, Circuit Judge, concurring.

The collective bargaining agreement between the Board of Governors of State

distinguished cases occurring "in the context of collective bargaining agreements." *Gilmer v. Interstate/Johnson Lane Corp.,* — U.S. —, 111 S.Ct. 1647, 1657, 114 L.Ed.2d 26 (1991).

Colleges and Universities ("Board") and the University Professionals of Illinois ("Union") offered a grievance procedure for Union members. A grievance could involve issues related to the claimant's age, race, religion, color, national origin, or sex, all in a class of claims protected by federal law. Or the claims could have involved constitutional issues (e.g. protected speech) or state issues (e.g. contract disputes). Of course, the advantage of the grievance procedure, which could result in binding arbitration, was that a just result could be achieved without literally making every employment dispute a federal case. This procedure would be a much less expensive and probably more efficient method to resolve disputes. As the majority points out, however, the problem is with the CBA's Article 17.2, which precludes or terminates the grievance procedure in the event "an employee seeks resolution of the matter in any other forum." This choice makes sense to the Union and the Board because it adds a less expensive alternative to resolving the dispute that would otherwise end up in a state or federal court. Nevertheless, the EEOC considers this choice to be discriminatory under § 4(d) of the ADEA because it results in the loss of a contractual benefit (the right to grieve) as a result of the employee's decision to file a charge, complaint, or lawsuit because of age. This, in turn, is deemed "discrimination" based on the act of pursuing the ADEA remedy (or for that matter, any other allegedly discriminatory act based on race, color, national origin, religion, or sex).

Article 17.2 does not discriminate because of age; it does not single out ADEA claimants from those filing other types of claims. However, § 4(d) makes the act of pursuing ADEA remedies, not age, the forbidden factor. Since under Article 17.2 an employee is treated less favorably because he filed a claim than he would have been treated otherwise, I agree that Article 17.2 technically violates Section 623(d) of the ADEA, and I concur, albeit reluctantly, with the result of the majority's opinion. But while the EEOC has advanced a technically correct reading of § 4(d), my concern is that the EEOC's approach will eliminate the contractual grievance procedure as a viable option for a Union member to use as an alternative means to resolve a dispute. Without Article 17.2, the Board has little incentive to offer a grievance procedure in lieu of seeking a resolution in some other forum. As it is, the collective bargaining agreement would offer an incentive for both sides to resolve the issue quickly, before statutes of limitations or other time limits expire. If the grievance procedure wasn't working, the Union member could turn to the courts (or some other form of arbitration), thus overriding the grievance procedure. Now the Union member will be permitted to operate in two forums, and presumably take the best deal. But the Board may see no benefit in doubling its exposure and adding to the costs of its administrative and legal defense. Thus, it could conclude that if court action must be an alternative, it will be the only alternative. It seems to me that this rigid result was not really the goal of our federal laws against discrimination. Nevertheless, any adjustment will have to be statutory, not with the courts.