**Mary Ellen WEDDING, Plaintiff,**

v.

**The UNIVERSITY OF TOLEDO, Defendant.**

**No. 3:93CV7707.**

United States District Court,
N.D. Ohio,
Western Division.

Feb. 9, 1995.

Bruce Comly French, Lima, OH, for plaintiff.

Susan B. Nelson, Spengler & Nathanson, Toledo, OH, for defendant.

## MEMORANDUM AND ORDER

JOHN W. POTTER, District Judge.

This cause is before the Court on plaintiff's motion to stay and compel utilization of grievance system, defendant's opposition, and plaintiff's reply. This is an employment discrimination lawsuit in which plaintiff advances claims under Title VII of the Civil Rights Act of 1964 and the Equal Pay Act of 1963. Plaintiff also alleges causes of action under the common law torts of deceit and intentional infliction of emotional distress. Plaintiff has moved this Court to stay these proceedings and compel the defendant to process a related grievance plaintiff filed under a collective bargaining agreement. The ultimate step in that grievance procedure is arbitration.

The primary issue before the Court is the legality of § 19.10, a provision contained in the collective bargaining agreement between the defendant and plaintiff's union, the American Association of University Professors. Section 19.10 reads as follows:

> The procedures described in this Article shall constitute the sole and exclusive method used for resolution of grievances. If a grievant seeks relief through a judicial or administrative forum outside of this grievance procedure for a subject matter covered by a grievance, the processing of the grievance shall be held in abeyance until the outside forum has issued a final determination or unless both the Employer and the [union] agree otherwise.

In June of 1993 plaintiff filed a grievance related to the issues involved in this lawsuit, pursuant to the CBA.[1] As plaintiff had already filed a grievance with the E.E.O.C. and the Ohio Civil Rights Commission, the grievance was held in abeyance. When those commissions returned their findings and terminated their investigation, the defendant reinstated plaintiff's grievance. The grievance procedure was again suspended when plain-

---

1. The CBA was ratified to be effective May 1, 1993; therefore, the CBA was the operative bargaining agreement for the purposes of this order.

tiff filed the current suit on December 7, 1993.

■ Plaintiff argues that § 19.10 is inconsistent with federal discrimination case law because it punishes or retaliates against an employee who exercises her right to sue under Title VII. Defendant argues that the provision is distinguishable from similar provisions that have been struck by federal courts in the discrimination context because § 19.10 has no punitive consequences.

The key inquiry here is whether the cessation of the grievance procedure under § 19.10 is an adverse employment action that would be considered retaliatory under Title VII. In *E.E.O.C. v. Board of Governors*, 957 F.2d 424, 428 (7th Cir.1992), the Seventh Circuit dealt with a similar provision that provided that a collective bargaining grievance/arbitration procedure could be terminated at the discretion of the employer if a plaintiff filed a related lawsuit. The Seventh Circuit held that the termination provision was prohibited by Title VII, reasoning:

> "when an employee's participation in statutorily protected activity is the determining factor in an employer's decision to take adverse employment action, that action is invalid regardless of the employer's intent. If the employer's differential treatment of employees is impermissible, the policy which provides for its differential treatment is invalid...."

*Id.* at 428. In addressing the question of whether or not the termination of the grievance procedure was "adverse" within the meaning of Title VII, the Court stated:

> "[U]nder the collective bargaining agreement between the Board and the Union, an employee has a contractual right to an in-house grievance procedure. However, an employee loses that right if he files a charge of discrimination.... Under Article 17.2 an employee must forfeit his contractual right to a grievance proceeding, a condition of his employment, or surrender his legal right to participate in litigation under the ADEA. Conversely, an employee who elects to pursue his grievance with the board's grievance procedure may lose

his right to bring his federal ... discrimination claim."

*Id.* at 429–30.

Defendant argues that § 19.10 does not suffer the same deficiencies as the controverted clause in *Board of Governors* because under § 19.10 the grievance procedure is only suspended rather than terminated. The Court, however, sees little practical difference between the two provisions.

The primary issue here, as in *Board of Governors,* is the effect that protected activity has on an employee's access, as a term or condition of employment, to some form of alternate dispute resolution. In the case at bar, the contractual ADR is only imminently available to the employee so long as the employee refrains from engaging in a protected activity. Similarly, an employee who refrains from exercising her rights under Title VII would have this procedure immediately available to them. Plaintiff does not have this opportunity, solely as a result of filing this lawsuit. Such a procedure is antithetical to Title VII. *See Id.* at 431 ("[t]o hold for the Board would allow it to deter its employees from their exercise of their ADEA rights by imposing adverse employment consequences"); *see also E.E.O.C. v. General Motors Corp.,* 826 F.Supp. 1122 (N.D.Ill. 1993).

The fact that plaintiff's grievance procedure could be reinstated after the termination of her civil action does not cure § 19.10's legal infirmities. Such a provision has the effect of encouraging employees not to file, or in the alternative, dismissing, any actions filed under Title VII. An employee also, faced with the running of the statute of limitations, may be forced to choose between pursuing a speedy nonjudicial resolution under the grievance procedure or filing suit to preserve her federal rights. Finally, the Court has some doubts as to the vitality and effectiveness of a grievance procedure that is reopened by a plaintiff after the unsuccessful termination of the plaintiff's lawsuit. In a very real sense, there is little practical difference between the application of § 19.10 and the clause in *Board of Governors.*

■ As § 19.10 is legally invalid, the Court must next turn its attention to whether

or not it should stay these proceedings and compel the parties to proceed with the CBA grievance procedure. As the procedure ultimately results in arbitration, the Court will treat this issue in the context of compelling arbitration.

■ When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). A court must stay proceedings and compel the arbitration if, by the terms of the contract, the issues are arbitrable, and the party moving for arbitration is not in default. *See, e.g., Al–Haddad Bros. Enterprises, Inc. v. M.S. Agapi*, 551 F.Supp. 956, 958 (D.Del.1982).

■ As with all matters of contractual interpretation, the intentions of the parties to the contract control the court's construction of the contract. *Id. See also Aspero v. Shearson American Express, Inc.*, 768 F.2d 106, 107–08 (6th Cir.1985). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Soler*, 473 U.S. at 626, 105 S.Ct. at 3353; *Arnold v. Arnold*, 920 F.2d 1269, 1281 (6th Cir.1990). Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Soler*, 473 U.S. at 626, 105 S.Ct. at 3353.

In the case at bar, plaintiff is not in default, as the Court has already determined that § 19.10 is inoperative. The only issue, then, is whether the claims at issue in this case are within the scope of the grievance procedure. *See Aspero*, 768 F.2d at 106–08. A grievance under the CBA is defined as:

a complaint or allegation by a member [of the union] that there has been a violation, misinterpretation or improper application of the provisions of this Agreement. Unless specifically modified by this Agreement, all provisions of this Agreement are subject to this Grievance Procedure.

CBA § 19.2.1. The CBA essentially calls for the grievance procedure to be utilized for any dispute that arises out of the CBA. As all of the incidents and claims at issue in plaintiff's complaint relate to her employment with the defendant and the CBA,[2] the Court holds that they are within the scope of the grievance procedure and that the Court may compel defendant to utilize the grievance procedure. *See Id.* at 107–08.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that plaintiff's motion to compel defendant to utilize the collective bargaining agreement grievance procedure be, and hereby is, GRANTED; and it is

FURTHER ORDERED that plaintiff's motion to stay these proceedings be, and hereby is, GRANTED; and it is

FURTHER ORDERED that, three months from the date of this order, the parties submit to the Court a status report, apprising the Court of the posture of this case.

---

**2.** The Court notes that the CBA contains a specific nondiscrimination provision.