ALDISERT, Circuit Judge,
Dissenting.
With respect, I am unable to agree with my colleagues and am compelled to dissent.
It is my view that the Majority Opinion fails to respect the cumulative experience of this Court’s judiciary that defines requirements of proving pretext. In so doing, it misapplies the burden-shifting paradigm under which ADEA cases are analyzed.
Detective Fasold does not dispute the facts proffered by his employer, the district attorney, as its nondiscriminatory reasons for the decision to fire him. Fa-sold merely offers a different interpretation of these facts. This is not enough to establish pretext.
Under ruling case law of this Court — by panels and en banc — merely offering a different explanation for an undisputed fact is not sufficient to show that the fact was a pretext for discrimination; a denial of the fact itself is required. See Stanziale v. Jargowsky, 200 F.3d 101, 106 (3d Cir.2000) (upholding summary judgment where the plaintiff attempted to show pretext by disputing the importance of the difference in educational qualifications between himself and the person hired rather than challenging the disparity itself or proving that the qualifications considered bore no actual relationship to the employment at issue); Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1110 (3d Cir.1997) (en banc) (determining that summary judgment was appropriate notwithstanding the plaintiffs contention that his failure to meet or approach his goal of raising $1.5 billion in financing was due to factors beyond his control stating that “the relevant question is not whether Keller could have done better; instead, the relevant question is whether the evidence shows that it was so clear that Keller could not have done bet *191 ter that ORIX Credit Alliance could not have believed otherwise.”); Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir.1994) (“To discredit the employer’s proffered reason, however, the plaintiff cannot simply show that the employer’s decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer’s proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.”) (citations and internal quotations omitted).
The Majority’s analysis of Fasold’s retaliation claim is also inadequate. In addition to failing because of a lack of proof of pretext, the retaliation claim should fail because Fasold suffered no adverse employment action subsequent to his engaging in protected activity and causation is lacking. Accordingly, I would affirm.
I.
This Court has a tradition of dismissing discrimination claims where the facts of an employer’s asserted nondiscriminatory reasons for an employment decision are undisputed. Under the Majority’s view, without any affirmative or direct evidence of discrimination whatsoever, a plaintiff may get to trial by offering alternative, less damaging, explanations for his or her actions without in any way disputing the historical or narrative facts offered by the employer. This approach will result in an unfortunate waste of judicial resources by diminishing the ability of district courts to use the tool of summary judgment in these types of cases. The Supreme Court shares my concern and also does not wish to “insulate an entire category of employment discrimination cases from review under Rule 50 [and, I would argue, the same concern applies to Rule 56]” or “treat discrimination differently from other ultimate questions of fact.” Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting St Mary’s Honor Center v. Hicks, 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)).
II.
The district attorney asserts that Fasold was fired because of problems with his performance in the job of Narcotics Detective. He proffered evidence of Fasold’s: (1) failure to generate his own case load; (2) failure to accept overtime when called upon; (3) failure to submit required leave forms; (4) leaving early from an important narcotics investigation before it was complete; and (5) a general reputation among co-workers for laziness.
Fasold countered these reasons by arguing that “his supervisor did not object to his leaving early” from the Cheltenham investigation, that he “never had a negative performance review before his transfer to the narcotics unit” and “that he ultimately rectified his failure to develop narcotics cases on his own after [the] meeting with [Frank] Bason [Fasold’s immediate supervisor in the narcotics unit] clarified his job responsibilities.” Fasold v. County of Montgomery, 2004 WL 834699, at *2 (E.D.Pa. Apr.16, 2004). He argues also that he did not refuse any ovei’time requests after his meeting with Bason and that Bason’s deposition shows that failure to submit required leave forms is not a large or uncommon mistake. The majority accepts Fasold’s explanations as *192 “evidence that is capable of refuting Defendants’ asserted nondiscriminatory reasons.” Maj. Op. at 188. I disagree.
Instead, I accept the conclusion of the District Court that Fasold’s evidence “ ‘falls short of what would be necessary to show that [the district attorney’s] dissatisfaction with his performance was so clearly unfounded that it cannot have been sincere.’” Fasold, 2004 WL 834699, at *2 6citing Keller, 130 F.3d at 1110).
Evidence that Fasold improved his arrest record and his responsiveness to overtime requests after being reprimanded by Bason does not contradict Bason’s testimony that, although Fasold had shown improvement, “the overall quality of work was not on par” with the other detectives.
Evidence that failure to submit required leave forms was common and not normally dealt with severely does not prevent Ap-pellees from considering such failures in light of what they perceive as a lazy, slipshod attitude.
Evidence of previous positive performance reviews does not prevent Appellees from considering the opinions of those who have expressed a negative view of Fasold’s work. See Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 528 (3d Cir.1992) (“Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations.”).
It is conceded that the most important reason for the decision to terminate Fasold was his work on the Cheltenham investigation. And like Fasold’s attempts to rebut the other proffered nondiscriminatory reasons, his attempt here fails to dispute the basic facts. The majority suggests three “disputed issues of material fact:”
[MJaterial disputes of fact exist respecting whether Fasold had received Ba-son’s pre-event approval to leave the scene early, the content of the later conversation wherein Fasold informed Bason that he was leaving the scene early, and whether Bason objected when Fasold told him that he was leaving the scene early.
Maj. Op. at 187. Simply stated these disputes are not “material facts.” What is material is that Fasold left the investigation before performing his duties and that he did not have specific permission to leave before his work of inspecting and inventorying items seized during the arrest was done. This dereliction of duty standing alone is a sufficient nondiscriminatory reason for terminating Fasold’s employment.
The fault was not leaving early, as the Majority characterized the employer’s nondiscriminatory reason; it was failure to do a proper job before he left. And to this there was no rebuttal, nor can there be.
III.
The Majority explains what Fuentes, Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061 (3d Cir.1996) (en banc), and Reeves make clear: that a plaintiff can survive summary judgment merely by showing that the employer’s proffered nondiscriminatory reasons are pretextual and does not need additional affirmative evidence of discrimination. I do not dispute that this is the law.
My problem is with the Majority’s subsequent conclusion that “Fasold has presented evidence from which a reasonable factfinder could choose to disbelieve Defendants’ proffered legitimate, nondiscriminatory reasons.” Maj. Op. at 185. It is the analysis that supports this conclusion that is unsupported by our cases because it allows the plaintiff to show pretext by merely offering a different explanation of the employer’s proffered nondiscriminato *193 ry reasons without actually disputing the central facts put forward by the employer. See Stanziale, 200 F.3d at 106; Keller, 130 F.3d at 1110; Fuentes, 32 F.3d at 765.
Our opinion in Sheridan is not to the contrary. There, the plaintiff succeeded in disputing the facts proffered by her employer. She presented evidence, contrary to her employer’s assertions, that she did not give out free drinks on the day in question and that witness testimony about her alleged violations of company policy were not credible. Sheridan, 100 F.3d at 1074-1075. She also presented affirmative evidence of sex discrimination by testifying that, after she had complained about sex discrimination in the decision not to consider her for the position of manager of the hotel restaurants, Amblard (her supervisor) told her that he “planned to watch her ‘like a dog’ and ‘like a hawk.’ ” Id. at 1074. She also testified that Amblard would completely ignore her in the presence of other male supervisors and speak only to them. Id.
Neither is Reeves to the contrary. There again the dispute was over the facts themselves. The employer claimed to have fired Reeves “due to his failure to maintain accurate attendance records,” whereas Reeves “introdue[ed] evidence that he had accurately recorded the attendance and hours of the employees he supervised.” Reeves, 530 U.S. at 133, 120 S.Ct. 2097. In Reeves there also was abundant and uncontroverted evidence of age discrimination. In addition to rebutting the employer’s stated reasons for discharging plaintiff: “Petitioner testified that [a superior] had told him that he ‘was so old [he] must have come over on the Mayflower’ and, on one occasion when petitioner was having difficulty starting a machine, that he ‘was too damn old to do [his] job.’” Id. at 151, 120 S.Ct. 2097. There is absolutely no comparable direct evidence here.
In these cases we should not be concerned with whether the impression Fa-sold’s superiors formed of him was warranted by the evidence, but whether that evidence was merely a sham. See Keller, 130 F.3d at 1109 (“[H]e must show, not merely that the employer’s proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer’s real reason.”). In Fuentes, we explained this tension as the difference between where an employer is shown to be “wrong or mistaken” and where the employer’s story is “weak[], implausible[ ], inconsistent! ], incoherent! ], or contradictory[ ].” 32 F.3d at 765.
Where, as here, the basic facts of the employer’s proffered legitimate reasons for the employment decision are undisputed, but the interpretation of those facts are disputed, the employer is likely to be, at most, wrong or mistaken. See Keller, 130 F.3d at 1110.
Here, there is no dispute, for example, that Fasold had refused to work overtime, or that he had failed to file required leave forms, or that his superior, Bason, had assessed his work as not up to par. With respect to the most important factor, the performance on the Cheltenham investigation, there is also no dispute. Fasold left the investigation without completing his work and without permission to leave before completing his work. Whether or not Fasold had permission to leave early is irrelevant. No factfinder could reasonably conclude that Fasold’s performance in the investigation was so beyond reproach that his employer’s attempt to use it as a basis for termination was implausible, inconsistent, incoherent or contradictory. See Fuentes, 32 F.3d at 765.
It is the prerogative of the employer, not this Court, to determine what consti *194 tutes a breach of protocol and the consequences that follow. See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir.1998) (“Whether sales quotas or evaluation scores are a more appropriate measure of a manager’s performance is not for the court (or factfin-der) to decide.”); Keller, 130 F.3d at 1109 (“The question is not whether the employer made the best or even a sound business decision; it is whether the real reason is discrimination.”); Fuentes, 32 F.3d at 765 (“[T]he plaintiff cannot simply show that the employer’s decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.”); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir.1988) (refusing to second guess an employer’s determination that the plaintiff had done a poor job in completing a specific task even where the employee/plaintiff was never warned that he was failing to meet company expectations regarding the task and stating that “our inquiry must concern pretext, and is not an independent assessment of how we might evaluate and treat a loyal employee”); Logue v. Int’l Rehab. Assocs., Inc., 837 F.2d 150, 155 n. 5 (3d Cir.1988) (“[0]ur task is not to assess the overall fairness of [the] .... employer’s actions.”).
In an appropriate discrimination case, the trier of fact may determine that what the employer claims was a breach was not actually a breach or did not actually take place and on that basis conclude that the employer’s proffered reason for an employment decision was pretextual. See Sheridan, 100 F.3d at 1074-1075. But here, it is undisputed that Fasold left the scene before the job was complete and there is no allegation that early departure from an arrest scene without completing standard police procedures is an accepted practice. Regardless of any generic approval of early departure, the DA’s office could reasonably conclude that leaving the investigation before seized evidence was inspected and inventoried without specific approval was irresponsible. We should not be in the business of second guessing these types of decisions. See Keller, 130 F.3d at 1109; Fuentes, 32 F.3d at 765; Healy, 860 F.2d at 1216.
I would affirm the district court’s grant of summary judgment because Fasold has not produced the type of evidence of pretext we require to meet his burden of going forward under McDonnell Douglas.
rv.
I disagree with the Majority’s analysis of Fasold’s retaliation claims for the same reasons explained above. A retaliation claim follows the same McDonnell Douglas methodology as a basic age discrimination claim; after the plaintiff makes out a prima facie case, the employer must assert nondiscriminatory reasons for the action which the plaintiff must then show to be pretextual. Here, the nondiscriminatory reasons put forward for refusal to reinstate Fasold at a second grievance hearing are identical to the reasons for firing Fa-sold in the first place. As I have already explained, I view the Fasold’s evidence of pretext as insufficient.
As to the retaliation claims, however, I dissent for the additional reason that, like the District Court, I would hold that Fa-sold failed to make out a prima facie case of retaliation. The Majority has stated the test:
To establish a prima facie case of proscribed retaliation under either the ADEA or the PHRA, a plaintiff must show: (1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contempora *195 neous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action.
Maj. Op. at 188-89 (citing Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-568 (3d Cir.2002)). More recently, we have clarified part two of the test as follows: “[T]he employer took an adverse employment action after or contemporaneous with the employee’s protected activity.” Glanzman v. Metropolitan Management Corp., 391 F.3d 506, 515-516 (2004) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir.2000) (emphasis added)). The sine qua non of retaliation is that adverse employment action take place. In order for adverse employment action to take place it must take place after or contemporaneous with protected activity engaged in by an employee. Glanzman, 391 F.3d at 516. The essence of protected activity is that it take place prior to the adverse employment action.
The DA’s Office argues that denial of a second request for reconsideration of his firing was not an adverse employment action because Fasold was no longer an employee when he engaged in the protected activity of filing a complaint with the EEOC and the PHRC. I am inclined to agree. The decision to terminate Fasold’s employment had already been made and was clearly approved by District Attorney Bruce Castor. The second grievance proceeding (the first had denied Fasold’s request for reconsideration before the EEOC claim was filed) was merely a reaffirmation of a decision that had already been made and upheld in the first grievance proceeding.
The Majority supports its conclusion that an adverse result in a second post-termination grievance proceeding constitutes adverse employment action by citing Equal Employment Opportunity Commission v. Board of Governors of State Colleges & Universities, 957 F.2d 424 (7th Cir.1992). But this case stands for the proposition that an employer may not have a policy which makes the filing of an EEOC claim a bar to participation in the company’s own grievance arbitration program. Id. at 430. There is no indication in the opinion that the plaintiffs seeking to pursue both federal and internal company remedies had already had their employment terminated.
In Glanzman, we held that “once her employment was terminated it was not possible for her to suffer adverse employment action” and therefore she did not make out a prima facie case of retaliation under the ADEA. 391 F.3d at 516. To be sure, in this case we have the added fact of the employer’s post-protected activity denial of a second request for reconsideration. I would hold that this denial was not an adverse employment action because Fa-sold was no longer an employee and the decision was a mere reaffirmation of one that had already been made. And I note that the Majority’s ruling does no favors to the working man or woman. Subjecting adverse rulings in optional post-termination internal grievance procedures to the retaliation provision of the ADEA creates a legal climate where employers are likely to choose not to make such procedures available.
Further, I am in agreement with the District Court that causation is lacking. For the majority, it is enough that Fa-sold’s second request for reconsideration was denied less than three months after he filed his complaint with the EEOC and that District Attorney Bruce Castor indicated his irritation with Fasold’s having filed a discrimination claim. Maj. Op. at 189. The Majority points out that analysis of causation is “highly context-specific,” Maj. Op. at 189 (citing Kachmar v. Sun *196 Gard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997)), and I find this analysis of causation totally inappropriate in the context of a second post-termination request for reconsideration.
It is quite a stretch to conclude that a denial of a second request for reconsideration was caused by anything outside of the factors that had already gone into the initial decision and evidence presented at the first grievance proceeding. This conclusion woefully overestimates the likelihood of Fasold being reinstated as a result of his second request for reconsideration.
* * * * * *
For the reasons heretofore set forth, I would affirm the judgment of the District Court. Accordingly, I respectfully dissent.